# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DANIELLE VANESSA
PAPPARGERIS,

     Plaintiff,

v.                                                        Case No. 8:24-cv-1922-KKM-CPT

COMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## ORDER

Danielle Pappargeris filed a claim with the Social Security Administration (SSA) seeking disability benefits based on several medical conditions, including diabetes, migraines, osteoarthritis, hypertension, seizures, mental problems, and a right knee injury. An SSA administrative law judge (ALJ) denied her claim after a hearing, and that denial became the final decision of the Commissioner after the Appeals Council denied Pappargeris's request for review. The Magistrate Judge entered a Report and Recommendation, recommending that the Commissioner's decision be affirmed. R&R (Doc. 25). Pappargeris timely objected, asserting two

alleged errors in the Report and Recommendation. Obj. (Doc. 26). On review of the Report and Recommendation, Pappargeris's objections, and the entire record, I find no reversible error. I overrule the objections, adopt the Report and Recommendation, and affirm the Commissioner's decision.

## I.    BACKGROUND

On February 4, 2021, Pappargeris filed a claim for Supplemental Security Income (SSI) disability benefits with the SSA, alleging that she has been unable to work since September 1, 2020. Tr. (Docs. 14-1:7)[1] at 92–93. The SSA denied Pappargeris's claim both initially and on her request for reconsideration. *Id.* at 91, 101–03. Pappargeris then asked for a hearing before an ALJ, *id.* at 144, where she appeared and testified. *Id.* at 69–90. After the hearing, the ALJ issued a decision finding that Pappargeris was not disabled and denying her claim for benefits. *Id.* at 45–55. Pappargeris unsuccessfully sought review of the ALJ's decision with the SSA Appeals Council, *id.* at 1–6, and then appealed in federal court, Compl. (Doc. 1). The matter was referred to the Magistrate Judge, who entered a Report and Recommendation on July 2, 2025, recommending that I affirm the Commissioner's

---

[1] The social security transcript was filed as seven appendices to Docket 14. Citations to the transcript reference the continuous page numbers located in the bottom right-hand corner of the page.

denial of Pappargeris's claim. *See* R&R. Pappargeris filed timely objections to the Report and Recommendation on July 16, 2025. *See* Obj.

The ALJ concluded, and the parties do not dispute, that Pappargeris suffered from epilepsy, diabetes, migraines, a right knee injury, osteoarthritis, hypertension, obesity, depression, anxiety, personality disorder, neurocognitive disorder, bipolar disorder, and post-traumatic stress disorder (PTSD). *See* Tr. at 47–48. Having identified Pappargeris's impairments, the ALJ then calculated her residual functional capacity (RFC). In doing so, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSR 16-3p." *Id.* at 50. He "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 416.920c." *Id.*

Pappargeris "alleged that her ability to perform substantial gainful activity was limited due to" numerous impairments. *Id.* at 51. In functional reports, Pappargeris "did not report any physical limitations, but she reported that she was limited in talking, hearing, seeing, memory, completing tasks, concentration, understanding, following instructions, using her hands, and getting along with others." *Id.* In

3

evaluating these subjective complaints of pain, the ALJ first determined "whether there [was] an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce [Pappargeris's] pain or other symptoms." *Id.* at 50. "[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce [Pappargeris's] pain or other symptoms ha[d] been shown, [the ALJ evaluated] the intensity, persistence, and limiting effects of [Pappargeris's] symptoms to determine the extent to which they limit[ed] [Pappargeris's] work-related activities." *Id.* "For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms [were] not substantiated by objective medical evidence, [the ALJ considered] other evidence in the record to determine if [Pappargeris's] symptoms limit[ed] the ability to do work-related activities." *Id.* at 50–51. "After careful consideration of the evidence, [the ALJ found] that [Pappargeris's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* at 51. But the ALJ found that Pappargeris's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.*

Looking to other record evidence, the ALJ first detailed Pappargeris's medical history, including reports from two emergency room visits, multiple neurological examinations, and a brain MRI showing no abnormalities. *Id.* at 51–52. The ALJ then explained that he found the opinions of two state agency psychological consultants, John Thibodeau, Ph.D, and Jessy Sadovnik, Psy.D, unpersuasive. *Id.* at 53. Although both consultants opined that Pappargeris's mental impairments were "nonsevere," the ALJ instead credited "evidence received at the hearing level, including the report from the neuropsychological examination by Dr. Schoenberg and the testimony of [Pappargeris]," concluding that she "has a moderate, rather than mild, limitation in her ability to interact with others and to concentrate, persist, and maintain pace." *Id.* The ALJ did not otherwise discuss the persuasiveness of Dr. Schoenberg's report.

Finally, and detrimentally to Pappargeris's claim, the ALJ found persuasive the report of state consultant Dr. Linda Galloway—who opined that Pappargeris was limited to light work with certain limitations—because her opinion was "supported by a detailed written explanation that shows that it is grounded on the evidence," and otherwise supported by Pappargeris's recent physical examinations and accompanying treatment notes. *Id.* at 53. Based on these considerations, the

ALJ concluded that Pappargeris "has the [RFC] to perform light work as defined in 20 C.F.R. § 416.967(b)" subject to certain limitations, including that Pappargeris "cannot perform work requiring a specific production rate or pace" but "can maintain attention and concentration for 2 hours at a time" provided she has morning, lunch, and afternoon breaks. *Id.* at 50.

Based on the calculated RFC and testimony from a vocational expert, the ALJ determined that, although Pappargeris could not perform her past "light, semi-skilled work" as a case aide, "considering [Pappargeris's] age, education, work experience, and [RFC], [she] is capable of making a successful adjustment to other work that exists in significant numbers, considered singly or in combination, in the national economy." *Id.* at 53, 55. Thus, the ALJ concluded that Pappargeris was not disabled during the relevant period and denied her claim for SSI benefits. *Id.*

Pappargeris then sought review before the Appeals Council and submitted a statement from Physician Assistant (PA) Stephanie Davis, completed after the ALJ's decision, discussing her work limitations. *Id.* at 1–7. The Appeals Council denied review, stating that PA Davis's statement, in addition to other newly submitted evidence, "does not show a reasonable probability that it would change the outcome of the decision." *Id.* at 2.

## II.   LEGAL STANDARDS

### A. Review of a Magistrate Judge's Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's Report and Recommendation. 28 U.S.C. § 636(b)(1). If a party files a timely and specific objection to a finding of fact by a magistrate judge, the district court must conduct a de novo review with respect to that factual issue. *Stokes v. Singletary*, 952 F.2d 1567, 1576 (11th Cir. 1992). The district court reviews legal conclusions de novo, even in the absence of an objection. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *Ashworth v. Glades Cnty. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019).

### B. Substantive Social Security Law and Review of ALJ Decisions

To be entitled to social security benefits, a claimant must be disabled, meaning that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). A " 'physical or mental impairment' is an impairment that results from anatomical, physiological,

or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

To regularize claims processing, SSA regulations establish a "sequential evaluation process" to determine disability. 20 C.F.R. § 416.920(a)(1). If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. *Id.* § 416.920(a)(4). Under the SSA's regulations, the ALJ must determine, in sequence, the following: (1) whether the claimant is engaged in "substantial gainful activity"; (2) whether the claimant has a severe impairment— one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. *Id.* If the claimant cannot perform the tasks required of his or her prior work, the ALJ must (5) decide whether the claimant can do other work in the national economy given the claimant's age, education, and work experience. *Id.* Before proceeding through steps (4) and (5), the ALJ must calculate a claimant's RFC, which is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (per curiam) (quotation omitted). A

claimant is entitled to benefits only if she cannot perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(g). Pappargeris's objections concern the ALJ's calculation of her RFC and the Appeals Council refusal to reconsider that calculation.

If the ALJ's determination of disability is supported by substantial evidence, it must be upheld so long as the determination applies the correct legal standard. *See* 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam). "The phrase 'substantial evidence' is a term of art" that "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotations omitted). Thus, in reviewing the Commissioner's decision, I "may not decide the facts anew, reweigh the evidence, or substitute [my own] judgment for that of the [ALJ]," "[e]ven if [I] find that the evidence preponderates against the [ALJ's] decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). No such deference applies to legal conclusions, and the ALJ's "failure to apply the correct law" or to provide "sufficient reasoning" to determine that he or she has conducted "the proper legal analysis" requires reversal. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

9

## III.   ANALYSIS

Pappargeris asserts two objections to the Magistrate Judge's analysis in the Report and Recommendation. *See* Obj. at 1–6. The first relates to the ALJ's assessment of Dr. Schoenberg's report as other medical evidence, *id.* at 1–4, and the second relates to the Appeals Council's rejection of PA Davis's opinion, *id.* at 5–6. I address each objection in turn.

### A. Dr. Schoenberg's Report Constitutes "Other Medical Evidence," and the ALJ's Decision is Otherwise Supported by Substantial Evidence

Pappargeris argues that the ALJ erred by failing to assign persuasive value to Dr. Schoenberg's report, which she asserts constitutes a "medical opinion" under 20 C.F.R. § 416.913. In the alternative and assuming Dr. Schoenberg's report is not a medical opinion, Pappargeris claims that the ALJ's RFC calculation is not supported by substantial evidence because it does not rely on *any* medical opinion. I disagree.

The social security regulations prescribe how an ALJ must "evaluate" different categories of evidence. *See id.* § 416.913(a). As relevant here, the ALJ must account for "all relevant medical and other evidence" and "state with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320–21 (11th Cir. 2021) (quotation omitted).

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s)," and concerns "impairment-related limitations and restrictions in" the claimant's ability to perform work demands, including the "mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." *Id.* § 416.913(a)(2)(i)(B). An ALJ "will articulate in [his] determination or decision how persuasive [he] find[s] . . . the medical opinion," considering the opinion's supportability, consistency, as well as the medical source's training and relationship with the claimant. *Id.* § 416.920c(b), (c).

On the other hand, the regulations do not attach the same explanatory requirements to other categories of evidence. *See Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018) (per curiam) (explaining that an ALJ is "not required to state what weight he assigned to medical records that did not qualify as medical opinions. An [ALJ] is obligated to assign a weight only to a statement that constitutes a medical opinion."). For example, an ALJ need not assign persuasive weight to "[o]ther medical evidence," defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments

about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* § 416.913(a)(3). "Statements by a medical source reflecting judgments about a claimant's diagnosis and prognosis" qualify as other medical evidence but are "not considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations." *Bowie v. Comm'r of Soc. Sec.*, 608 F. Supp. 3d 1200, 1203 (M.D. Fla. 2022) (quoting *Rice v. Kijakazi*, No. 4:20-cv-01414-RDP, 2021 WL 3473219, at *5 (N.D. Ala. Aug. 6, 2021)).

Here, Dr. Schoenberg's report does not satisfy the regulatory definition of medical opinion evidence, and the ALJ therefore did not err in declining to explain the report's persuasive weight. To start, Pappargeris was only "referred" to Dr. Schoenberg "to assist with diagnosis and treatment planning." Tr. at 722. Dr. Schoenberg conducted a virtual neuropsychological examination of Pappargeris and completed an accompanying "Status Exam Report," Tr. at 724, in which he wrote "[c]riteria met for Mild Neurocognitive disorder at a minimum," *id.* at 722. In a subsection titled "Recommendations," Dr. Schoenberg noted that Pappargeris "could benefit from associative learning, chunking and visual memory to improve functional memory," *id.* at 723, and "is likely to benefit from . . . [e]xtra time to take

tests / complete[] assignments," "[a]ccommodations for decreased learning rate/memory problems, including completing assignments in an environment that minimizes distractions, repeated learning trials and use of electronic aides," and "[c]ompleting one task at a time." *Id.* at 724.

None of those statements assess "what [Pappargeris] can still do despite [her] impairment(s)." 20 C.F.R. § 416.913(a)(2). Instead, Dr. Schoenberg made a limited "judgment[] about the nature and severity of [Pappargeris's] impairments," either provided in the first instance or confirmed certain "diagnos[e]s," including "Mild Neurocognitive disorder," and ultimately recommended courses of treatment or beneficial steps Pappargeris could take. *Id.* § 416.913(a)(3). Those treatment-oriented recommendations neither "address [Pappargeris's] ability to work" nor "reflect what activities [Pappargeris] can or cannot perform" in a workplace setting. *Romero*, 752 F. App'x at 908 (concluding that "consultation records mention[ing] only Romero's physical complaints, his medical history, the results of his physical examinations and laboratory tests, and recommendations for and responses to treatment" did not constitute medical opinions).

To the extent that Dr. Schoenberg recommended limitations, medications, or consultations from which Pappargeris "could benefit" or "is likely to benefit," Tr. at

723–24, such recommendations were definitionally treatment-oriented and prognostic. For example, the Eleventh Circuit recently explained that a nurse practitioner's treatment notes did not qualify as a medical opinion because "the lifting, pushing, and pulling limitations were just one of many treatment-plan recommendations for [claimant's] back pain, which also included taking the prescribed pain medication and muscle relaxant, receiving imaging of his lumbar back, and returning for a follow-up appointment after imaging was complete." *Ball v. Comm'r of Soc. Sec.*, No. 24-12496, 2025 WL 1010204, at *3 (11th Cir. Apr. 4, 2025) (per curiam). So too here, where Dr. Schoenberg recommended that, among other things, Pappargeris undergo "cognitive/speech rehab to improve her functional memory," "[c]onsider follow-up neuropsychological study in-person to . . . further refine neuropsychological risks to neurosurgical intervention," and would be "likely to benefit from SSRI/SNRI as otherwise medically indicated." Tr. at 723. That Pappargeris *might* benefit from such treatments expresses no opinion of "what [she] could still do in a work context." *Ball*, 2025 WL 1010204, at *3. The ALJ therefore did not err by omitting the traditional persuasiveness analysis for medical opinions.

Finally—and assuming that Dr. Schoenberg's report is not a medical opinion—Pappargeris objects that "the absence of guiding opinion evidence for the

present RFC was prejudicial as the complexities of the psychological and cognitive evidence in the record were not so simple as to allow an ALJ to reliably interpret," and thus the ALJ's determination was not supported by substantial evidence. Obj. at 4. Again, I disagree.

An ALJ must consider all relevant evidence in calculating a claimant's RFC, but his decision need not be "underpinned by a medical source opinion" so long as it is supported by substantial evidence, including objective medical records and other medical evidence. *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (per curiam); *Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *see also* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."). Here, the ALJ calculated Pappargeris's RFC based on his review of treatment and evaluation notes (including Dr. Schoenberg's), Pappargeris's functional reports and testimony, and the (unpersuasive) opinions of two state agency psychological consultants. Tr. at 50–53.

Contrary to Pappargeris's view that "[o]nly trained medical professionals possess [the] skill and experience" necessary to "grasp the functional impact of"

Pappargeris's impairments, Obj. at 4, "the task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Comm'r of Soc. Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016) (per curiam). And because substantial evidence supports the ALJ's determination that Pappargeris is not disabled, the decision must stand. *See Bloodsworth*, 703 F.2d at 1239.

## B. The Appeals Council Permissibly Determined that PA Davis's Statement Would Not Change the Outcome of the Decision

Pappargeris objects that the Appeals Council unreasonably concluded that PA Davis's opinion would not undermine the ALJ's RFC calculation. Instead, she asserts that it is "inarguable that PA Davis's opinion would be material to an RFC incorporating limitations from [her] impairments." Obj. at 5. Pappargeris's argument misunderstands the Appeals Council's obligation, and so I overrule her objection.

The Appeals Council only reviews an ALJ's decision if a claimant provides "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5).[2]

---

[2] Pappargeris suggests that "material" evidence, by definition, provides a reasonable probability of changing the ALJ's decision. *See* Obj. at 5–6. That is wrong. Although

While the Appeals Council may not "perfunctorily adhere" to an ALJ's decision, *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 783–84 (11th Cir. 2014), it need not "give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision." *Id.* at 784. That is particularly true where the claimant presents "additional evidence" related to a medical condition already considered by the ALJ. *Medders v. Comm'r of Soc. Sec.*, No. 21-11702, 2022 WL 222719, at *2 (11th Cir. Jan. 26, 2022) (citing *Mitchell*, 771 F.3d at 783–85). In that case, "no further explanation is necessary." *Id.*

Once the Appeals Council satisfies this limited duty, a court should not "second-guess that assertion" unless the claimant provides an "affirmative basis" showing that the Council failed to evaluate the new evidence. *Mitchell*, 771 F.3d at 783. Here, where "the ALJ's decision reflects that he considered the impairments reflected in the new treatment records," Pappargeris must "identify . . . specific information that undermines the ALJ's assessment of her conditions during the relevant period." *Medders*, 2022 WL 222719, at *2. Pappargeris failed to do so

---

"material" evidence was previously defined as that creating a "reasonable *possibility* of a different outcome," § 416.1470 was amended to add the requirement that evidence show a "reasonable *probability*" of changing the ALJ's decision. *See Pupo v. Comm'r of Soc. Sec.*, 17 F.4th 1054, 1063 n.3 (11th Cir. 2021).

before the Magistrate Judge and has therefore waived review of the issue. *See* R&R at 19 n.8; *see Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (holding "that a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge").

Even had she preserved the argument, Pappargeris's objections present no "affirmative basis" to question the Commissioner's decision. *Mitchell*, 771 F.3d at 783. At most, Pappargeris claims that PA Davis's opinion "discussed limitations caused by [Pappargeris's] bipolar I disorder, generalized anxiety disorder, panic attacks, PTSD, and history of seizures," while conceding that the ALJ already recognized those impairments. Obj. at 5. And although Davis represented that Pappargeris "meets the criteria for disability due to the substantial limitations imposed by her conditions," Tr. at 13, Pappargeris never explains how that statement specifically "undermines" the ALJ's RFC determination, *Medders*, 2022 WL 222719, at *2. To the contrary, the ALJ expressly considered PA Davis's earlier treatment notes that "consistently reported that mental status examinations of the claimant revealed that her thought processes were intact, her cognition was grossly intact, and her insight and judgment were appropriate" during the relevant period.

Tr. at 48. Accordingly, Pappargeris fails to show that the Appeals Council erred in declining to review the ALJ's decision.

## IV.  CONCLUSION

In sum, the ALJ evaluated Pappargeris's disability claim consistent with the governing law and upon review of the entire record. In calculating Pappargeris's RFC, the ALJ properly relied on "other medical evidence" and committed no reversible error.  Nor did the Appeals Council err in determining that Pappargeris's newly submitted evidence was insufficient to upset the ALJ's decision.

After conducting a careful and complete review of both the Report and Recommendation and Pappargeris's objections, 28 U.S.C. § 636(b)(1), it is

**ORDERED**:

1.  Pappargeris's objections to the Magistrate Judge's Report & Recommendation (Doc. 26) are **OVERRULED**.

2.  The Magistrate Judge's Report and Recommendation (Doc. 25) is **ADOPTED** and made a part of this Order for all purposes.

3.  The Commissioner's decision is **AFFIRMED**.

4.    The Clerk is directed enter **JUDGMENT** in the Commissioner's

favor; to terminate any pending motion and deadline; and to **CLOSE**

this case.

**ORDERED** in Tampa, Florida, on August 29, 2025.

Kathryn Kimball Mizelle
United States District Judge